UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RALPH L. GOLIDAY, | ) | CASE NO. 4:07 CV 3603 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) |  AND ORDER |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

On November 20, 2007, *pro se* petitioner Ralph L. Goliday filed the above-captioned petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Mr. Goliday, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), filed this action against the United States of America and J. T. Shartle, Warden at F.C.I. Elkton. He maintains that his rights under the Fourth Amendment were violated by the "stalking horse ruse" and that he is actually innocent of the crime for which he was convicted.

*Background*

Mr. Goliday was charged in the United States District Court for the Northern District of Ohio with one count of possession with intent to distribute crack cocaine and one count of possession with intent to distribute powder cocaine in violation of 21 U.S.C. § 841(a)(1). *United States v. Goliday*, No. 4:03cr0005 (N.D. Ohio Jan. 8, 2003)(Nugent, J.) Following a trial, which

commenced March 8, 2004, the jury found Mr. Goliday guilty on both counts of the indictment. He was sentenced to 240 months imprisonment. Defendant appealed his conviction and sentence, which the Sixth Circuit affirmed on July 7, 2005. He also filed a motion to vacate, set aside, or correct his sentence in this court on February 22, 2006. *Goliday v. United States*, No.1:06cv406 (N.D. Ohio 2006)(Nugent, J.)  The motion was denied by Judge Nugent on June 30, 2006. An appeal was filed in the Sixth Circuit, which denied Mr. Goliday's application for a certificate of appealability on February 16, 2007.

In his present petition, Mr. Goliday challenges the veracity of the government's claim that the probation officer was looking for another probationer at the time he discovered Mr. Goliday. As a matter of reference, the Court will look to the outline of facts set forth in Mr. Goliday's appeal to the Sixth Ciruit. *See Myers v. United States*, 198 F.3d 615, 619 (6th Cir.1999)(proper for federal court in post-conviction proceeding to rely on factual conclusions given on direct appeal). The record indicates that petitioner was on probation and under supervision by the Trumbull County, Ohio, Adult Probation Department during the incident in this case. On the evening of August 22, 2002, Vincent Peterson, his supervising probation officer, received a call from Drug Enforcement Administration Agent Melanie Gambill, who informed him that Robert Boone was possibly located at Mr. Goliday's residence. *United States v. Goliday*, Nos. 04-3834, 04-3897 (N.D. Ohio June 8, 2005). Mr. Boone was another probationer Mr. Peterson was asked to locate. Mr. Peterson drove to the residence and met a fellow probation officer outside Mr. Goliday's house. Although there were numerous cars located outside the residence, Mr. Boone's car was not among them. Mr. Peterson then decided to stop in to talk with Mr. Goliday, but first dropped the accompanying probation officer's car back at their office.

Upon the officers' return, they knocked on the front door of the residence and "an individual answered and asked what they wanted. Peterson and Miles answered that they were there to see 'Ralph' and were let into the house. The door opened directly into the kitchen, which is where Peterson and Miles were standing when they viewed what appeared to be a clear plastic bag of marijuana sitting in plain view on top of a drier located in the kitchen." *United States v. Goliday*, No. Nos. 04-3834, 04-3897, 2005 WL 1389532 (N.D. Ohio June 8, 2005).  A number of individuals then proceeded to knock on the door of the residence while the officers were in the home. Their inquiries ranged from "Let me get a 20" to direct requests to purchase a twenty-dollar rock of crack cocaine. The record reveals:

> Due to all of the activity at the residence, Peterson then decided to call Agent Gambill and requested assistance. Peterson suspended the probation search while waiting for Gambill to arrive because of his concern over the number of people approaching the house. Approximately thirty minutes later Gambill arrived along with Detective Weber, and the four officers engaged in a full search of the house. During this search they discovered additional crack cocaine, powder cocaine, a handgun, and a bullet-proof vest. The drugs seized led to the indictment in this case.

Mr. Goliday maintains that he is entitled to relief pursuant to 28 U.S.C. § 2241 because he is "actually innocent of the entire possessions [sic] with intent to distribute, and the gun charge that he was charged, indicted, and convicted on." (Pet. at 1.) The substance of his argument rests on the fact that he neither owned the drugs nor the home in which the drugs were found.  He does not dispute the fact that he was in the home at the same time the drugs were identified or that the police found rocks of crack cocaine in the toilet bowl of the bathroom from which he ran.

It is Mr. Goliday's secondary argument that his rights under the Fourth Amendment

were denied.[1] Petitioner refers to the testimony of the probation officers given during his suppression hearing and claims they falsely testified. He states that their testimony regarding the reason they "went to Goliday's residence in the first palce [sic] was because they were looking for Boone, another probationer" is false. (Pet. at 10.) To refute their claim, he attaches a "Report of Investigation" prepared by DEA agent Gambill on August 23, 2002. The Report indicates that a confidential source with the Warren Police Narcotics Unit alerted Agent Gambill that "Goliday a.k.a. 'L-mont' is distributing multi-ounce quantities of crack cocaine in the warren, [sic] Ohio area." (Pet.'s Atth. G.) It is Mr. Goliday's contention that this document proves that the probation officers went to the residence for the sole purpose of violating his Fourth Amendment rights through the "stalking horse rule."[2]

*28 U.S.C. § 2241*

Mr. Goliday is seeking habeas relief to attack the constitutionality of his conviction. Courts have uniformly held that claims asserted by federal prisoners seeking to challenge their convictions or imposition of their sentence shall be filed in the sentencing court under 28 U.S.C. § 2255, *see Bradshaw v. Story,* 86 F.3d 164, 166 (10th Cir. 1996); *Cabrera v. United States*, 972 F.2d 23, 25-26 (2d Cir.1992); *Cohen v. United States*, 593 F.2d 766, 770 (6th Cir.1979). It is only under those rare instances when it appears that the remedy afforded under § 2255 is "inadequate or

---

[1] He admits that this is the same failed argument his attorney raised at a July 18, 2003 suppression hearing. The argument was also raised in his unsuccessful appeal to the Sixth Circuit.

[2] Searches conducted by probation officers who act as "stalking horse[s]" for police, in effect abusing their authority and circumventing the warrant requirement of the Fourth Amendment, may be unlawful. *See United States v. Russ*, 23 Fed.Appx. 245, 2001 WL 1136127 (6th Cir.2001) (unpublished); *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir.2000); *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir.1997);

ineffective to test the legality of his detention" that a federal prisoner may bring a § 2241 claim challenging his conviction or imposition of sentence. *Accord United States v. Hayman*, 342 U.S. 205, 223 (1952); *In re Hanserd*, 123 F.3d 922, 929 (6th Cir.1997).

A prisoner who can show that an intervening change in the law establishes his actual innocence may be in a position to invoke the savings clause of § 2255 and proceed under § 2241. *Lott v. Davis*, No. 03-6172, 2004 WL 1447645, at *2 (6th Cir. June 18, 2004)("it appears that a prisoner must show an intervening change in the law that establishes his actual innocence in order to obtain the benefit of the savings clause"); *see Martin v. Perez*, 319 F.3d 799, 804 (6th Cir.2003); *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001)("Without determining the exact scope of the savings clause, we conclude that defendants' claims do not fall within any arguable construction of it because defendants have not shown an intervening change in the law that establishes their actual innocence"). "'To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Martin*, 319 F.3d at 804 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Because "actual innocence" means factual innocence, rather than mere legal insufficiency, Mr. Goliday has failed to state a claim. As the Sixth Circuit noted in the appeal filed by petitioner:

> [p]robation officers and police officers . . . may work together in conducting a search provided that the parole officer is pursuing parole-related objectives. *Russ*, 23 Fed.Appx. at 247 (citing *McFarland*, 116 F.3d at 318). That is, for purposes of Ohio law, the probation officer must be 'engaged within the scope of [his or her] supervisory duties or responsibilities' and has 'reasonable grounds to believe that the offender is not abiding by *506 the law or otherwise

-5-

>is not complying the conditions of the offender's probation.'
>Ohio Rev.Code § 2951.02(C)(2).

*Goliday*, No., 2005 WL 1389532 at, *3. Whether or not the officers' actions were prompted by the DEA, Mr. Goliday has not negated the fact that their inquiry clearly addressed whether he, as a probationer, was complying with the conditions of his probation.

The fact that he may now be foreclosed from filing a §2255 does not render it an 'inadequate or ineffective' alternative under the statute's gate keeping provision. *See In re Vial*, 115 F.3d 1192, 1194 n. 5 (4th Cir.1997); *Garris v. Lindsay*, 794 F.2d 722, 726-27 (D.C.Cir.) (per curiam), *cert. denied*, 479 U.S. 993 (1986). The fact that the petitioner may have been denied permission to file a second or successive motion to vacate similarly fails to render his options inadequate. *See In re Davenport*, 147 F.3d 605, 608 (7th Cir.1998).

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243, without prejudice as to any §2255 motion Mr. Goliday may seek to pursue.[3] The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

---

[3]In *In re Shelton*, 295 F.3d 620, 622 (6th Cir.2002) (citing *Adams v. United States*, 155 F.3d 582, 584 (2nd Cir.1998)), the Sixth Circuit held that, with regard to pro se litigants in particular, '[D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.' Unless such a warning is provided, a re-characterized § 2255 motion must not be counted against the prisoner for purposes of the bar on successive motions.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 2/12/08